IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2006

## THOMAS STUDDARD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C02-61     Lee Moore, Judge**

---

**No. W2004-00500-CCA-R3-PC  - Filed September 27, 2006**

---

The petitioner, Thomas Studdard, was indicted by the Dyer County Grand Jury on three counts of rape of a child in 2002. The petitioner subsequently pled guilty to one count of incest and was sentenced to eight years as a Range II multiple offender. The petitioner sought a reduction of his sentence in the trial court. The trial court denied the relief sought and the petitioner appealed. On direct appeal, this Court, without reaching the merits of the petitioner's sentencing issues, vacated the judgment of conviction on the grounds that incest was not a lesser-included offense of rape. Thomas Poston Studdard v. State, No. W2003-01210-CCA-R3-PC, 2004 WL 370259 (Tenn. Crim. App., at Jackson, Feb. 27, 2004), perm. app. granted, (Tenn. Sept. 7, 2004). Having granted the petitioner's application for permission to appeal, our supreme court concluded that the trial court had jurisdiction to accept the petitioner's guilty plea and remanded the case to this Court for consideration of the sentencing issues. Studdard v. State, 182 S.W.3d 283 (Tenn. 2005). On remand, this Court determined that the trial court did not err in denying the petitioner's motion to reduce his sentence and that the certification requirement of Tennessee Code Annotated section 40-35-503(c) did not violate the petitioner's equal protection rights.[1] Thomas Poston Studdard v. State, No. W2005-02707-CCA-RM-PC, 2006 WL 287427 (Tenn. Crim. App., at Jackson, Feb. 6, 2006), perm. app. denied, (Tenn. May 30, 2006). While the petitioner's direct appeal was still pending, the petitioner sought post-conviction relief on the basis of ineffective assistance of counsel[2]. The post-conviction court denied the petition and the petitioner sought relief in this Court. After a review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

---

[1]Tennessee Code Annotated section 40-35-503(c) prohibits the parole of a convicted sex offender unless a licensed psychiatrist or psychologist certifies that the offender does not pose a likelihood to re-offend.

[2]Because the direct appeal was still pending when the petitioner sought post-conviction relief, this Court, on July 13, 2005, stayed the post-conviction proceedings until the Supreme Court entered a final decision in the petitioner's direct appeal.

Clifford K. McGown, Jr., Waverly, Tennessee, on appeal; Jim W. Horner, District Public Defender and H. Tod Taylor, Assistant Public Defender, at trial, for the appellant, Thomas Studdard.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On February 11, 2002, the petitioner was indicted on three counts of rape of a child. In August of 2002, the petitioner entered a best interest plea to one count of incest with an agreed-upon sentence of eight years as a Range II multiple offender.

Subsequently, the petitioner filed a pro se motion for correction or reduction of sentence, pursuant to Tennessee Rule of Criminal Procedure 35. The petitioner alleged his plea agreement failed to stipulate that his parole was contingent upon his completion of a mandatory sexual offender program and that his trial counsel had misinformed him of the actual time he would be required to serve by telling him he would be eligible for parole in approximately fourteen months. The petitioner asserted that the interest of justice required that his sentence be reduced to conform with his expectation at the time he entered into his plea agreement. The trial court denied the relief sought and the petitioner appealed.

On direct appeal, this Court vacated the judgment of conviction, determining that incest was not a lesser-included offense of rape, but did not reach the merits of the petitioner's sentencing issues. Thomas Poston Studdard v. State, No. W2003-01210-CCA-R3-PC, 2004 WL 370259 (Tenn. Crim. App., at Jackson, Feb. 27, 2004), perm. app. granted (Tenn. Sept. 7, 2004). Our supreme court concluded that the trial court had jurisdiction to accept the petitioner's guilty plea and remanded the case to this Court for consideration of the sentencing issues. Studdard v. State, 182 S.W.3d 283 (Tenn. 2005). On remand, this Court determined that the trial court did not err in denying the petitioner's motion to reduce his sentence and that the certification requirement of Tennessee Code Annotated section 40-35-503(c) did not violate the petitioner's equal protection rights. Thomas Poston Studdard v. State, No. W2005-02707-CCA-RM-PC, 2006 WL 287427 (Tenn. Crim. App., at Jackson, Feb. 6, 2006), perm. app. denied (Tenn. May 30, 2006).

On August 21, 2003, while the petitioner's direct appeal was still pending, the petitioner filed a pro se petition for post-conviction relief in which he claimed that his guilty plea was unlawfully induced or involuntarily entered into and that the State breached the plea agreement. The petitioner filed an amended petition after appointment of counsel in which he reasserted his earlier arguments and argued that his sentence was "void or voidable because of the abridgment of his constitutional right to effective assistance of counsel and due process."

The post-conviction court held a hearing on the petition on October 31, 2003. At the hearing, the petitioner testified that trial counsel did not talk to him "about the certification or the counseling that was involved [with his sentence]," but rather told him that "those programs were offered by the State." According to the petitioner, trial counsel first came to him with an offer of fifteen years at one hundred percent and then worked the offer down to eight years at thirty-five percent, but made a "big deal" about the percentage. The petitioner understood that once he served thirty-five percent of the eight years, "that was the time that [he] was led to believe that [he'd] be eligible to be released." In the petitioner's words, he "was not forewarned about anything other than the fact that [he] was pleading to eight years at thirty-five percent and [he] would have the same opportunity for parole as anyone else would have." The petitioner complained that "because of a program that's mandatory by the State, [his sentence] was an impossibility then, and is now." At the time of the hearing, the petitioner was not enrolled in the required program. The petitioner asked the trial court to grant "specific performance" of his plea agreement. On cross-examination, however, the petitioner agreed that he received an eight-year sentence with a thirty-five percent release eligibility.

The petitioner's trial counsel testified that he had been practicing law for thirty-one years and that he was retained to represent the petitioner at trial. According to trial counsel, he met with the petitioner numerous times and employed a psychologist to meet with the victim prior to trial. According to the mental health expert, the victim was telling the truth. The expert also evaluated the petitioner prior to trial.

Trial counsel advised the petitioner that he was facing fifteen to twenty-five years at one hundred percent. Once plea discussions started, trial counsel recalled several offers that were discussed. The final offer was eight years at thirty-five percent and that was the offer that was communicated to the petitioner. Trial counsel did not "remember" discussing parole eligibility with the petitioner. Trial counsel did recall talking with the petitioner about the counseling programs that would have to be completed in order for the petitioner to be eligible for parole. In fact, trial counsel testified that he advised the petitioner that he would, in his opinion, "have to do eight years." Trial counsel also felt that the petitioner's prior criminal convictions would prohibit his parole eligibility after service of thirty-five percent of the eight-year sentence.

The petitioner came back to the stand to rebut trial counsel's testimony, stating that trial counsel "absolutely did not" communicate to him that he was going to have to "flatten" the eight year sentence or that there was a certification requirement prior to his eligibility for parole.

At the conclusion of the hearing, the post-conviction court denied relief. The post-conviction court then entered an order denying post-conviction relief. The petitioner filed a timely notice of appeal. On appeal, the petitioner argues that the post-conviction court improperly denied the petition for post-conviction relief.

<u>Analysis</u>

<u>Post-Conviction Standard of Review</u>

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. <u>See</u> <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn. 1997); <u>Alley v. State</u>, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. <u>See</u> <u>State v. Honeycutt</u>, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely <u>de novo</u> standard with no presumption of correctness. <u>See</u> <u>Shields v. State</u>, 40 S.W.3d 450, 458 (Tenn. 2001).

<u>Ineffective Assistance of Counsel</u>

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. <u>See</u> <u>Powers v. State</u>, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." <u>Henley v. State</u>, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. <u>See id.</u> at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is <u>de novo</u>" with no presumption of correctness. <u>Burns</u>, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. <u>See</u> <u>Adkins v. State</u>, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but

unsuccessful, tactical decision made during the course of the proceedings. See id. However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the case herein, the petitioner argues that trial counsel was ineffective because he failed to inform the petitioner of the provisions of Tennessee Code Annotated section 40-35-503(c) prior to the entry of the guilty plea.

At the conclusion of the hearing, the post-conviction court made the following findings of fact and conclusions of law:

> The proof that we have before us, after considering the testimony today, also considering the transcript of the guilty plea taken on August 22, 2002, and the transcript of your hearing on your Rule 35 motion that was conducted on April 11, 2003, it's clear to the Court that there was no misunderstanding as far as the plea was concerned. And he was questioned about that, and that is that it was an 8-year sentence as a Range II offender, which would be at 35 percent, as [the petitioner] states. He was questioned about any other agreements, and he did not indicate that there was any other agreement. The proof today is such that the one thing that is clear is that it was an eight-year sentence as a Range II offender.

> Unfortunately, the - - it's not working out, I suppose, as [the petitioner] would like, but I agree with [the State], the problem is with the Tennessee Department of Correction or the Board of Paroles. That does not mean that there's ineffective assistance of counsel. [Trial counsel] appears to have met the standard set out in Baxter v. Rose and the Strickland case. The burden is on the petitioner to show that counsel's act of omissions were so serious as to an objective standard of reasonableness under prevailing professional norms. The Court does not find under the facts that have been presented that that has in fact occurred.

> It's unfortunate, [petitioner], that you're dissatisfied as you are, but there's not anything at this point that the Court can do. Under the circumstances, you might try a petition for writ of habeas corpus at the time, you know, that your sentence expires. But at this point in time, under the law governing ineffective assistance of counsel or post-conviction relief, the Court must deny your petition.

In order for the petitioner to prevail herein, he must show, by clear and convincing evidence, that his attorney failed to properly advise him of the possible consequences of his plea and that trial counsel's failure to do so resulted in prejudice. Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the

effectiveness of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. See Baxter, 523 S.W.2d at 936. Under Strickland v. Washington, 466 U.S. at 687, the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. However, in the context of a guilty plea, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The record supports the finding that trial counsel was effective. Implicit in the post-conviction court's findings and conclusions is a lack of accreditation of the petitioner's testimony. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odum, 928 S.W.2d 18, 23 (Tenn.1996). Further, this Court has previously determined that defense counsel's failure to advise a criminal defendant about the details of his parole eligibility, including informing the defendant of a sex offender that the program must be completed prior to parole release eligibility is not ineffective assistance of counsel. See e.g., Wade v. State, 914 S.W.2d 97, 104 (Tenn. Crim. App. 1995); Alan Dale Bailey v. State, No. M2001-01018-CCA-R3-PC, 2020 WL 215657 (Tenn. Crim. App., at Nashville, Feb. 8, 2002), perm. app. granted (Tenn. May 28, 2002), app. dismissed (Jul. 11, 2002); Rickey Sams v. State, No. 03C01-9511-CC-00368, 1996 WL 663884 (Tenn. Crim. App., at Knoxville, Nov. 14, 1996), perm. app. denied (Tenn. Mar. 3, 1997). Defense counsel's failure to inform a sex offender that he must be certified in order to be eligible for parole is, likewise, not ineffective assistance. Wade, 914 S.W.2d at 104. The petitioner's herein is unable to satisfy the prejudice prong of Strickland where the parole certification requirements would have been applied to the petitioner whether he pled guilty or was convicted by a jury. After a de novo review, we conclude that the evidence in the record does not preponderate against the post-conviction court's decision that trial counsel was effective.

Voluntary and Knowing Guilty Plea

The petitioner also questions the knowing and voluntary nature of his guilty plea. The petitioner argues that he was "induced" to enter a plea of guilty by the promise of a thirty-five percent release eligibility.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Alford, 400 U.S. at 30. The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 191 S.W.2d 346, 353 (Tenn. Crim. App. 1995); see also Chamberlain v. State, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Specifically, a reviewing court must consider "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the

-6-

court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Id. at 904. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904.

In Boykin v. Alabama, the United States Supreme Court held that an accused's guilty plea must be voluntarily, knowingly, and understandingly entered before a conviction resting upon a guilty plea  may comply with due process. 395 U.S. 238 (1969). In Boykin, the Supreme Court stated that a guilty plea constituted a waiver of various rights and that it would not presume a waiver of the following federal constitutional rights from a silent record: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. Id. at 242. Thus, Boykin placed a premium on a showing in the record of a sufficient waiver of these specified rights.

Exercising "its supervisory power to [e]nsure that the courts of this State afford fairness and justice to defendants in criminal cases," our Supreme Court developed stricter standards than those mandated by the Boykin decision in State v. Mackey, 553 S.W.2d 337, 340-41 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. P. 37(b) & Tenn. R. App. P. 3(b). Mackey requires that trial judges accepting pleas of guilty in criminal cases substantially adhere to the following procedure:

> [T]he court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
> (1) The nature of the charge to which the plea is offered, and the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law; and, if applicable, that a different or additional punishment may result by reason of his prior convictions or other factors which may be established in the present action after the entry of his plea; and
> (2) If the defendant is not represented by an attorney, that he has a right to be represented by an attorney at every stage of the proceeding against him, and if necessary, one will be appointed to represent him; and
> (3) That he has a right to plead not guilty or to persist in that plea if it has already been made, and, that he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and
> (4) That if he pleads guilty, there will not be a further trial of any kind except to determine the sentence so that by pleading guilty he waives the right to a trial; and
> (5) That if he pleads guilty, the court or the state may ask him questions about the offense to which he has pleaded, and if he answers these questions under oath, on the

record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or false statement, and, further, that, upon the sentencing hearing, evidence of any prior convictions may be presented to the judge or jury for their consideration in determining punishment.

Id. at 341. The Mackey court also stated:

The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from prior discussions between the District Attorney General and the defendant or his attorney.

Id. The Mackey requirements have been adopted into Rule 11 of the Tennessee Rules of Criminal Procedure.

However, some of the mandated Mackey advice is not required by Boykin, but represents a supervisory pronouncement of the Court. State v. Prince, 781 S.W.2d 846, 852-53 (Tenn. 1989). "[A]ny other requirement of Mackey in excess of Boykin is not based upon any constitutional provision, federal or state. It follows, that any omissions, not required in Boykin may be relied upon on direct appeal in appropriate cases but such omissions have no validity on the first or any subsequent post-conviction proceeding." Id. at 853. Courts of this state have consistently held that Mackey advice which is not required by Boykin is not constitutionally based and, therefore, is not cognizable in a petition for post-conviction relief. See, e.g., Johnson v. State, 834 S.W.2d 922, 925 (Tenn. 1992); State v. Neal, 810 S.W.2d 131 (Tenn. 1991), overruled in part on other grounds by Blankenship, 858 S.W.2d at 902; Prince, 781 S.W.2d at 853; Hicks v. State, 983 S.W.2d 240, 247 n.10 (Tenn. Crim. App. 1998); Sneed v. State, 942 S.W.2d 567, 568-69 (Tenn. Crim. App. 1996); Bryan v. State, 848 S.W.2d 72, 75 (Tenn. Crim. App. 1992); Teague v. State, 789 S.W.2d 916, 917 (Tenn. Crim. App. 1990).

The colloquy between the petitioner and the trial court at the plea hearing indicates that the trial court asked the petitioner if the plea was freely and voluntarily made; if he had been informed of the elements of the crime, burden of proof, and defenses; and if he understood: (1) the nature of the charges against him; (2) that by pleading guilty he was giving up the right to a trial by jury; (3) that by pleading guilty he was giving up the right to confront witnesses; and (4) that by pleading guilty he was giving up the right to self-incrimination. In other words, the trial court satisfied the requirements of Boykin. Moreover, the Tennessee Supreme Court determined in Jaco v. State, 120 S.W.3d 828 (Tenn. 2003), that a guilty plea was not involuntary where the trial court failed to inform the defendant of sex offender certification requirements but the defendant was properly informed as to his release eligibility date because the defendant did not receive inaccurate information as to his parole eligibility, rather the defendant was not informed of the criteria that guided the determination of whether he would actually be released upon arriving at his parole release eligibility date. The petitioner herein was likewise properly informed that he would be eligible for parole after service

of thirty-five percent of his sentence and testified at the post-conviction hearing that he was armed with that knowledge prior to the guilty plea. The petitioner complained that his plea agreement failed to stipulate that his parole eligibility was contingent upon his completion of the mandatory sexual offender program and certification prior to parole. "Neither the federal or state constitution requires that [the defendant] be informed of all possible factors that could affect the parole board's decision." Id. at 833. The petitioner was correctly informed as to his release eligibility date. Consequently, the petitioner has failed to prove that his guilty plea was not knowing or voluntary. This issue is without merit.

### Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JERRY L. SMITH, JUDGE